UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ANTOINETTE PUCCIO,

                      Plaintiff,

                                **MEMORANDUM & ORDER**
v.                                   15-CV-06941 (PKC)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                      Defendant.
-----------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Antoinette Puccio ("Plaintiff") brings this action under 42 U.S.C. § 405(g),

seeking judicial review of the Social Security Administration's ("SSA") denial of her claim for

Disability Insurance Benefits ("DIB"). The parties have cross-moved for judgment on the

pleadings. (Dkts. 9, 15.) Plaintiff seeks reversal of the Commissioner's decision and an

immediate award of benefits, or alternatively, remand for further administrative proceedings.

The Commissioner seeks affirmation of the denial of Plaintiff's claims. For the reasons set forth

below, the Court GRANTS Plaintiff's motion for judgment on the pleadings and DENIES the

Commissioner's motion. The case is remanded for further proceedings on a narrow issue as

discussed herein consistent with this opinion.

## BACKGROUND

## I.     PROCEDURAL HISTORY

On September 13, 2010, Plaintiff applied for DIB alleging that she had been disabled

since April 1, 2009, due to diabetes, Meniere's digestive disorder, depression, anxiety, and panic

disorder. (Tr. 206–07, 234–35.)[1]  On initial review, Plaintiff's application was denied. (Tr. 92, 133–40.)  On January 21, 2011, Plaintiff requested a hearing before an administrative law judge ("ALJ") (Tr. 141), and on January 27, 2012, ALJ Harvey Feldmeier presided over a hearing. (Tr. 34–68.)  The ALJ issued a written decision on April 24, 2012, finding that Plaintiff was not disabled and therefore not entitled to DIB. (Tr. 97–110.)  Plaintiff requested review of the ALJ decision (Tr. 22–23) and on July 19, 2013, the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") remanded the case for further administrative proceedings, noting that Plaintiff's last insured date was December 2014, not December 2011, and thus the ALJ should have made findings through the date of his April 2012 decision rather than through December 2011; ALJ Feldmeier had left a period unadjudicated. (Tr. 93–96.)

On June 12, 2014, ALJ Margaret Donaghy presided over a hearing in which Plaintiff appeared with counsel and testified. (Tr. 69–91.)  A vocational expert ("VE") also testified. (Tr. 69–91, 137–74.)  At this hearing, Plaintiff amended her alleged onset date from April 1, 2009, to January 1, 2012. (Tr. 72–73.)[2]  On July 16, 2014, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 111–130.)  Plaintiff sought review of the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner on November 30, 2015, when the Appeals Council denied Plaintiff's request for review. (Tr. 1–4.)  Plaintiff timely commenced this action on December 7, 2015, and cross-motions for judgment on the pleadings were fully briefed on January 25, 2017.

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript.

[2] Therefore, the time period relevant to Plaintiff's application for benefits runs from January 1, 2012, the amended alleged onset date, through the ALJ's July 16, 2014 decision.

**II. ADMINISTRATIVE RECORD**

The Court adopts the undisputed and comprehensive factual recitation contained in the Commissioner's motion and the references to the administrative record included therein. (Dkt. 16.) However, the Court discusses the record evidence in further detail as necessary to address the motions.

**DISCUSSION**

**I. STANDARD OF REVIEW**

Unsuccessful claimants for disability benefits under the Social Security Act (the "Act") may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing a final decision of the Commissioner, the Court's duty is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (alterations and internal quotation marks omitted)). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal citation omitted). However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Under any circumstances, if there is substantial evidence in the record to support

the Commissioner's findings as to any fact, they are conclusive and must be upheld. 42 U.S.C. §

405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).

## II.    ELIGIBILITY STANDARD FOR SOCIAL SECURITY DISABILITY BENEFITS

In order to be found eligible for DIB benefits, claimants must be disabled as defined by

the Act. Claimants are disabled under the meaning of the Act when they are unable "to engage

in any substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant must prove that the impairment is "of

such severity that [the claimant] is not only unable to do [his or her] previous work but cannot,

considering [his or her] age, education, and work experience, engage in any other substantial

gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). However, the

ALJ has an affirmative obligation to develop the administrative record. *Lamay v. Comm'r of

Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009). This means that the ALJ must seek additional

evidence or clarification when the claimant's medical reports contain conflicts or ambiguities, if

the reports do not contain all necessary information, or if the reports lack medically acceptable

clinic and laboratory diagnostic techniques. *Demera v. Astrue*, 12-CV-432, 2013 WL 391006, at

*3 (E.D.N.Y. Jan. 24, 2013); *Mantovani v. Astrue*, 09-CV-3957, 2011 WL 1304148, at *3

(E.D.N.Y. March 31, 2011).

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant

bears the burden of proof in the first four steps in the inquiry; the Commissioner bears the burden

in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ

determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R.

§ 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the claimant is not

engaged in "substantial gainful activity," the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is determined to be severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled within the meaning of the Act. However, if the impairment is severe, the ALJ proceeds to the third step, which considers whether the impairment meets or equals one of the impairments listed in the Act's regulations (the "Listings"). 20 CFR § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

If the ALJ determines at step three that the claimant has one of the listed impairments, then the ALJ will find that the claimant is disabled under the Act. On the other hand, if the claimant does not have a listed impairment, the ALJ must determine the claimant's "residual functional capacity" ("RFC") before continuing with steps four and five. The claimant's RFC is an assessment which considers the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." 20 C.F.R. § 404.1545(a)(1). The ALJ will then use the RFC determination in step four to determine if the claimant can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the answer is yes, the claimant is not disabled. Otherwise the ALJ will proceed to step five where the Commissioner then must determine whether the claimant, given the claimant's RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the answer is yes, the claimant is not disabled. However, if not, the claimant is disabled and is entitled to benefits. *Id.*

## III.    THE ALJ'S DECISION

On July 16, 2014, the ALJ issued a decision denying Plaintiff's claims. (Tr. 111-130.) At the first step, the ALJ concluded that Plaintiff did not engage in substantial gainful activity since the amended alleged onset date of January 1, 2012. (Tr. 116.)

At step two, the ALJ found that Plaintiff had two severe impairments: major depressive disorder, single episode, moderate; and post-traumatic stress disorder (PTSD). (Tr. 117.) She found the following non-severe impairments: degenerative changes of the bilateral knees, disc bulges and herniations of the cervical and lumbar spine, diabetes, and vertigo. (*Id.*) In determining that the orthopedic impairments in knees, cervical and lumbar spine conditions were non-severe impairments, the ALJ noted that "while records . . . show medically determinable orthopedic impairments, such as degenerative changes in both knees, and [disc bulging and herniation] in the cervical and lumbar spine," based on Plaintiff's MRI examination, there was "no evidence to show that these conditions caused more than minimal work-related limitations that lasted, or could be expected to last, for a continuous period of at least 12 months." (*Id.*) The ALJ especially noted that Plaintiff did not submit any treatment notes dated after December 2011. (*Id.*) The ALJ explained that the MRIs and Dr. Howard Baum's[3] medical source statement did not establish a severe impairment in the absence of any supporting treatment notes, proof of follow-up to establish a course of treatment, compliance with a treatment regimen, and medical improvement or lack thereof. (*Id.*) The ALJ also found Plaintiff's allegations of conditions such as thyroid nodule, hepatitis B infection, and rheumatoid arthritis were "not medically determinable." (*Id.*)

---

[3] Dr. Baum was Plaintiff's treating orthopedist.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1. (Tr. 118.) Specifically, the ALJ found that the Plaintiff's mental impairments do not medically equal the severity of either listing 12.04 (Affective disorders) or listing 12.06 (Anxiety-related disorders). (Tr. 118.) The ALJ found that Plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria were not satisfied. (Tr. 119.) The ALJ found that Plaintiff had mild restriction in the domain of activities of daily living based on Plaintiff's testimony at the hearing and what Plaintiff told Dr. Jemour Maddux, Psy.D, a psychological consultative examiner. (Tr. 118.) In social functioning, the ALJ found that Plaintiff had moderate difficulties. (*Id.*) The ALJ noted that Plaintiff's psychiatric treatment notes from 2012 and 2013 did not provide much information on this issue and that although Plaintiff denied any socialization, she also told Dr. Maddux about having the capacity to go shopping and take public transportation, which "require[ed] a high degree of social functioning." (Tr. 118.) In finding that Plaintiff had moderate difficulties in the area of concentration, persistence, or pace, the ALJ noted that the psychiatric progress notes by Dr. Felix Dron, her treating psychiatrist, and NPP Margaret O'Keefe, a psychiatric nurse indicated depressed mood, and anxiety, but no evidence of impaired cognitive functioning or short or long-term memory. (*Id.*) In finding that Plaintiff experienced no episodes of decompensation, the ALJ noted the lack of evidence that Plaintiff had required any inpatient psychiatric hospital admissions or emergency room visits since January 1, 2012. (*Id.*) The ALJ also noted that Plaintiff did not appear to have attended routine outpatient psychotherapy since May 15, 2013. (*Id.*)

The ALJ also found that there was no evidence to find that the "paragraph C" criteria were satisfied for listing 12.04 or listing 12.06. (Tr. 119.) The ALJ explained that listing 12.04C requires repeated episodes of decompensation, a residual disease process resulting in such marginal adjustment that even minimal increases in mental demands or changes in the environment would be predicted to cause her to decompensate, or a current history of one or more years' inability to function outside a highly supportive living arrangement. (*Id.*) The ALJ found no evidence that Plaintiff had experienced any of these criteria. (*Id.*) As to listing 12.06C, the ALJ found no evidence that Plaintiff had experienced a complete inability to function independently outside the area of her own home because she appeared to be able to go shopping, take public transportation, and attend doctors' appointments as necessary. (*Id.*)

The ALJ next concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels but with some nonexertional limitations. (*Id.*) Specifically, the ALJ found that Plaintiff was limited to a low-stress work environment, meaning work requiring only occasional decision-making and judgment; only occasional changes in the work setting, procedures, and tools; and only occasional interaction with co-workers and the general public. (*Id.*)

In making this determination, the ALJ followed the RFC two-step process. (*Id.*) As to Plaintiff's knee, back, and neck pain, the ALJ noted that although Plaintiff testified that she was in "constant pain" and limited in terms of many types of activities, the objective medical evidence from the amended onset date did not support such testimony. (Tr. 120.) Specifically, the ALJ noted that although the diagnostic imaging of Plaintiff's knees, neck, and back established the presence of medically determinable impairments, that they did not in and of themselves establish that the impairments caused more than minimal functional limitations that have lasted, or could be expected to last, for a continuous period of at least twelve months. (Tr.

121.)  The ALJ noted that in spite of keeping the record open after the hearing, Plaintiff's representative did not submit any updated progress notes from Plaintiff's treating orthopedist. (*Id.*)  The ALJ explained that the December 2011 progress note alone did not objectively establish a significantly limited physical residual functional capacity.  (*Id.*)

As for Plaintiff's mental impairment, the ALJ noted that Plaintiff's testimony about experiencing severe panic attacks, not leaving the house, avoiding being around other people, and having no interest in doing anything was not supported by objective medical evidence.  (Tr. 120.)  The ALJ noted that Plaintiff submitted verification of receiving counseling from a domestic violence service center and that she had been seeing Dr. Dron, a psychiatrist, since February 29, 2012.  (Tr. 121.)  Nevertheless, the ALJ also noted that subsequent treatment notes from Dr. Dron did not show a "particularly high frequency" of office visits, or a marked severity to her psychiatric symptoms.  (*Id.*)  The ALJ observed, "[r]ather, [Plaintiff's] symptoms seemed to wax and wane," where she had a setback on October 6, 2012, related to news that her ex-husband would soon be released from prison, but then by November 17, 2012, she had improved. (*Id.*)  The ALJ further noted that Plaintiff submitted only two other progress notes from Nurse O'Keefe, dated December 8, 2012 and May 15, 2013.  (*Id.*)  The ALJ pointed out that in the May 15, 2013 progress note, Plaintiff reported having less frequent and less intense anxiety symptoms and having normal self-care skills.  (*Id.*)  While recognizing that Nurse O'Keefe indicated in the same progress note that Plaintiff appeared anxious and depressed, the ALJ also observed that Nurse O'Keefe concluded Plaintiff to have "intact" cognitive functioning and short- and long-term memory.  (Tr. 122.)  The ALJ also noted that Plaintiff's diagnoses and medication prescriptions remained the same.  (*Id.*)

The ALJ also made a credibility determination in light of seven factors set forth by the Commissioner in Social Security Ruling 96–7p. (Tr. 122.) The ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged by Plaintiff, Plaintiff's reports concerning the intensity, persistence, and functionally limiting effects of this pain were not entirely credible. (Tr. 122.) The ALJ acknowledged that "symptoms may suggest a greater degree of impairment than can be shown by the medical evidence alone." (*Id.*) In spite of Plaintiff's hearing testimony that she had a very limited set of daily activities and that she required assistance, the ALJ noted that Plaintiff had given conflicting statements concerning her daily activities. (*Id.*) The ALJ explained that, in November 2010, Plaintiff presented a far less restrictive picture of her daily functioning to Dr. Maddux, the psychological consultative examiner. (*Id.*) The ALJ also noted that Nurse O'Keefe's May 2013 notes indicated that Plaintiff had "normal self-care skills." (*Id.*) The ALJ also found that Plaintiff had given inconsistent testimony at the hearing as to frequency and intensity of her symptoms compared to what she told her doctors on other occasions. (*Id.*) The ALJ noted that in spite of Plaintiff's testimony that she experienced constant physical pain and panic attacks that require her going to the emergency room, the actual treatment record shows a "far more sporadic degree of care." (Tr. 123.) Specifically, the ALJ pointed out that Plaintiff had not seen Dr. Baum after December 2011, had not seen Dr. Dron since November 2012, and had not received any psychotherapy after May 2013. (*Id.*) The ALJ also noted that there was no documentation for emergency room visits for panic attacks in support of Plaintiff's assertions. (*Id.*) Furthermore, the ALJ found that contrary to Plaintiff's testimony that her medications caused drowsiness and fatigue, no report of such side effects was mentioned in any of her

treating physicians' notes. (*Id.*) Therefore, the ALJ found that Plaintiff's testimony was not fully supported by the record as a whole. (*Id.*)

The ALJ gave little weight to Plaintiff's treating physicians, Dr. Dron, Nurse O'Keefe, and Dr. Baum. (Tr. 123–24.) The ALJ found that Dr. Dron's March 19, 2014 Medical Source Statement, in which Dr. Dron opined that Plaintiff had moderate and marked limitations in several work-related areas, deserved only little weight because his progress notes did not include any statements consistent with the marked limitations in so many work-related areas. (Tr. 123.) The ALJ also noted that the last progress note by Dr. Dron was in November 2012. (*Id.*) The ALJ also found that Nurse O'Keefe's two progress notes from December 2012 and May 2013 also did not support a finding of "great restrictions" in work-related areas. (*Id.*) The ALJ further noted that Plaintiff had not seen any other psychiatrists and had not required any inpatient hospitalizations or emergency room visits. (*Id.*)

The ALJ also gave little weight to Plaintiff's treating orthopedist's answers in the "Medical Assessment of Ability to do Work-Related Activities" questionnaire, in which Dr. Baum opined that, over the course of a projected eight-hour workday, Plaintiff would need to periodically alternate sitting and standing; could only stand and/or walk for a total of less than two hours; and could lift and/or carry only less than ten pounds frequently or occasionally. (Tr. 123.) The ALJ did so because of the lack of ongoing treatment notes from Dr. Baum. (Tr. 123–24.) For the same reason, the ALJ also gave little weight to the opinion of Plaintiff's treating rheumatologist, Dr. Kuo, in the "Medical Assessment of Ability to do Work-Related Activities." (*Id.*) The ALJ noted that Dr. Kuo identified the same physical limitations that Dr. Baum had found. (Tr. 124.)

In sum, the ALJ concluded that "in the absence of longitudinal treatment notes showing severe physical impairments, no restrictions can be made in [Plaintiff's] ability to perform the exertional demands of work." (*Id.*) As for Plaintiff's depression and anxiety, the ALJ concluded that these conditions would reasonably restrict her from engaging in potentially stressful workplace situations such as decision-making, more than occasional changes in the workplace, and more than occasional interactions with others. (*Id.*) However, the ALJ still did not find that greater restrictions were warranted based on objective evidence. (*Id.*)

At step four, the ALJ concluded that Plaintiff was unable to perform past relevant work, noting that Plaintiff worked as a bakery manager, salesperson, office worker, and bartending instructor. (*Id.*) At step five, however, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 124–25.) In making this determination, the ALJ relied on a vocational expert, who testified that Plaintiff would be able to perform occupations such as photocopy machine operator, cafeteria attendant, and mail clerk. (Tr. 125.) The ALJ concluded at the end of the five-step inquiry that Plaintiff was not disabled and denied her claims for benefits. (*Id.*)

## IV.   ANALYSIS

Plaintiff's sole argument on appeal is that the ALJ erred in rejecting the opinions of her three treating physicians—Dr. Baum, the treating orthopedist, Dr. Kuo, the treating rheumatologist, and Dr. Dron, the treating psychiatrist. While the Court finds most of the ALJ's opinion thorough and well-reasoned, it concludes that the ALJ failed to comply with the treating physician rule as to Dr. Dron.

**A. ALJ Failed to Comply With the Treating Physician Rule as to Dr. Dron**

"Regardless of its source," Social Security regulations require that "every medical opinion" in the administrative record be evaluated when determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1527(d), 416.927(d). "Acceptable medical sources" that can provide evidence to establish an impairment include, *inter alia*, Plaintiff's licensed treating physicians and licensed or certified treating psychologists. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).

The treating physician rule "generally requires deference to the medical opinion of a claimant's treating physician[.]" *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Social Security regulations require that the ALJ give "controlling weight" to the medical opinion of an applicant's treating physician so long as the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in [the] case record." *Lucas v. Barnhart*, 160 F. App'x 69, 71 (2d Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). "Treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [a claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. Medically acceptable clinical and laboratory diagnostic techniques include consideration of a "patient's report of complaints, or history, [a]s an essential diagnostic tool." *Green–Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (citation omitted).

It bears emphasis that "not all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician." *Correale–Englehart v. Astrue*, 687 F. Supp. 2d 396, 427 (S.D.N.Y. 2010) (citing *Burgess v. Astrue*, 537 F.3d 117, 128

(2d Cir. 2008)). The preference for a treating physician's opinion is generally justified because "[such] sources are likely to be [from] the medical professionals most able to provide a detailed, longitudinal picture of [the Plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The opinion of a consultative physician, "who only examined a Plaintiff once, should not be accorded the same weight as the opinion of [a] Plaintiff's treating [physician]." *Anderson v. Astrue*, 07 CV 4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009) (citing *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 282–83 (E.D.N.Y. 2005)). This is because "consultative exams are often brief, are generally performed without the benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." *Id.* (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)). In addition, opinions of consulting physicians— whether examining or non-examining—are entitled to relatively little weight where there is strong evidence of disability on the record, or in cases in which the consultant did not have a complete record. *Correale–Englehart*, 687 F. Supp. 2d at 427.

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran*, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2), now codified at 20 C.F.R. § 404.1527(c)(2)). If the ALJ did not afford "controlling weight" to opinions from treating physicians, he needs to consider the following factors: (1) "the frequency of examination and the length, nature and extent of the treatment relationship;" (2) "the evidence in support of the opinion;" and (3) "the opinion's consistency with the record as a whole;" and (4) "whether the opinion is from a specialist." *Clark*, 143 F.3d at 118; *accord Burgess*, 537 F.3d at 128.

Although "[t]he ALJ is not required to explicitly discuss the factors," "it must be clear from the decision that the proper analysis was undertaken." *Elliott v. Colvin*, 13-CV-2673, 2014 WL 4793452, *15 (E.D.N.Y. Sept. 24, 2014).

Furthermore, when a treating physician's opinions are repudiated, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33; *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999); 20 C.F.R. § 404.1527(d)(2) (stating that the Social Security agency "will always give good reasons in [its] notice of determination or decision for the weight [given to a] treating source's opinion" (emphasis added)). "The failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand." *See Burgin v. Astrue*, 348 F. App'x 646, 648 (2d Cir. 2009) (quoting *Halloran*, 362 F.3d at 33 (stating that the Second Circuit will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and . . . will continue remanding when [the Second Circuit] encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.") (changes in original omitted)).

In considering Plaintiff's treating psychiatrist's opinion, the ALJ gave little weight to Dr. Dron's March 19, 2014 Medical Source Statement, a questionnaire styled form, in which Dr. Dron opined that Plaintiff had varying degrees of impairment in ten areas. (Tr. 123.) Specifically, Dr. Dron reported that Plaintiff had slight impairments in understanding and remembering short, simple instructions; moderate impairments in carrying out short, simple instructions; and marked impairments in understanding, remembering detailed instructions, carrying out detailed instructions, and making judgments on simple work-related decisions. (Tr. 518.) Dr. Dron also noted that Plaintiff had moderate limitations in interacting appropriately

with the public; and marked impairments in interacting appropriately with supervisors and co-workers, responding appropriately to work pressures in usual work settings, and responding appropriately to changes in a routine work setting. (Tr. 519.)

The ALJ provided two reasons for the little weight given to Dr. Dron's March 2014 Medical Source Statement: first, Dr. Dron's own progress notes documenting his treatment of Plaintiff ended in November 2012; and second, those notes "[did] not provide any statements consistent with such marked limitations in so many work-related areas." (Tr. 123.) The ALJ further noted that there was no evidence that [Plaintiff] has seen any other psychiatrist or required any inpatient hospitalizations or emergency room visits. (*Id.*)

The Court finds that the ALJ's first reason for giving little weight to Dr. Dron's opinion—the fact that Plaintiff last saw Dr. Dron in November 2012—was improper. Plaintiff had been treated by Dr. Dron from February 2012 through November 2012, *i.e.*, for ten months of 2012. November 2012 was eleven months into the relevant time period, which began in January 1, 2012, the alleged onset date. Thus, Plaintiff's treatment by Dr. Dron during that period is relevant to assessing Plaintiff's mental impairments, and his March 2014 opinion, which was based on those ten months of treatments, should not have been so severely discounted.

Moreover, the Court finds that the ALJ's second reason for giving little weight to Dr. Dron's opinion—that Dr. Dron's progress notes did not provide *any* supporting statements—was not based on substantial evidence. Although Dr. Dron's progress notes did not specifically discuss Plaintiff's limitations in terms of work-related areas, the progress notes included observations that could support findings of marked limitations in such work-related domains. While Dr. Dron observed in his progress notes that Plaintiff displayed intact and logical thinking,

he also noted, on October 6, 2012, that Plaintiff experienced setback and had "intrusive recollections of traumatic events, flashbacks, nightmares, irritability and outbursts of rage." (Tr. 526.) Dr. Dron also noted that the Plaintiff spent the session focusing on improving problem solving skills, and increasing insight and understanding. (*Id.*) In three separate progress notes that covered the time period of March 2012 to June 2012, Dr. Dron noted that Plaintiff's "speech and thinking appear[d] slowed by depressed mood." (Tr. 531, 529, 528.) These observations in the progress notes could be construed to support Dr. Dron's March 2014 opinion that Plaintiff had marked limitations in some areas that related to her ability to work. Because the ALJ's decision does not discuss these portions of Dr. Dron's progress notes, the Court has no way of knowing whether or to what extent the ALJ considered this material. In the absence of any discussion as to whether the ALJ evaluated such record evidence that was supportive of Dr. Dron's March 2014 opinion, the Court assumes that the ALJ selectively considered only the records that were inconsistent with Dr. Dron's opinion. *See Nusraty v. Colvin*, No. 15–CV–2018, 2016 WL 5477588, at \*11 (E.D.N.Y. Sept. 29, 2016) (finding that "the ALJ's conclusion that [the treating physician's] opinion is inconsistent with his own notes and with the medical record is not supported by substantial evidence because the ALJ failed to consider the evidence in the record that is consistent with [the treating physician's opinion]"); *Poles v. Colvin*, 14-CV-6622, 2015 WL 6024400, at \*4 (W.D.N.Y. Oct. 15, 2015) (finding that because the ALJ did not discuss records that undermined his conclusion, that conclusion was "improperly based on a selective citation to, and mischaracterization of, the record"); *Arias v. Astrue*, 11-CV-1614, 2012 WL 6705873, at \*2 (S.D.N.Y. Dec. 21, 2012) ("The ALJ may not simply ignore contradictory evidence. When the record contains testimony tending to contradict the ALJ's conclusion, the

ALJ must acknowledge the contradiction and explain why the conflicting testimony is being disregarded.").

### B. The ALJ Properly Discounted the Opinions of Drs. Kuo and Baum

Plaintiff also contends that the ALJ violated the treating physician rule by giving Dr. Kuo's and Dr. Baum's opinions little weight. Specifically, Plaintiff asserts that the ALJ did not cite to any expert opinion consistent with her view, including the opinions of the consultative physicians. The Court finds this argument meritless. Contrary to Plaintiff's contention that the ALJ assumed the role of a medical expert, the ALJ merely noted that Dr. Baum's and Dr. Kuo's opinions expressed in the "Medical Assessment of Ability to do Work-Related Activities" form warranted little weight given that Plaintiff did not see either doctor for her knees or spine during the *entire* relevant period from January 2012 to July 2014, except for when she visited both doctors in May 2013, the day they filled out the "Medical Assessment" forms. (Tr. 124.) The ALJ notes in her decision that she held the record open to allow Plaintiff's representative additional time to submit medical records from Drs. Baum and Kuo. (Tr. 114.) However, Plaintiff's representative did not submit corroborating treatment notes, or indicate that assistance was needed in obtaining those notes. (*Id.*) Thus, the ALJ's decision to give little weight to Dr. Baum's and Dr. Kuo's opinions and her determination as to Plaintiff's orthopedic injuries were based on substantial evidence.

### CONCLUSION

For the reasons set forth above, the Court DENIES the Commissioner's motion for judgment on the pleadings and GRANTS Plaintiff's cross-motion on the limited issues discussed herein. The Commissioner's decision is remanded for further consideration consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: Brooklyn, New York
      March 31, 2017